this section, and therefore the fourth subdivision controls. Section 432 of the Code provides for service of process on a foreign corporation; but, as the defendants are not a corporation, that section does not apply. The summons and complaint in this action were served upon an agent of the railroad corporation who represented the corporation before the appointment of the defendants as receivers; and it may be conceded that he continued to represent the defendants in this state after their appointment, but there is no provision of the Code allowing the service of a summons on the agent of a natural person, unless such agent has been designated under section 430 of the Code. The service on the agent is, however, sought to be upheld under an act of Congress (sections 65 and 66, Judicial Code; Act March 3, 1911, c. 231). As I read that act, it applies to actions commenced in the courts of the United States or established by the United States. The act does not attempt to regulate actions commenced in the state courts; and it seems to me it has absolutely no application to the method of service of process in the Supreme Court of the state of New York. But, if Congress had attempted to direct how process in the Supreme Court of the state of New York should be served, such direction could not override the law of New York, and authorize a method of service not provided for by the law of this state.

The cases cited by Mr. Justice CLARKE do not at all apply. So far as they hold that receivers appointed by a federal court may be sued in a state court without leave of the court that has appointed them, and that, as this action was properly brought in this court, they are controlling. We have nothing to do with the cases that hold that actions brought in the federal courts are regulated by the act of Congress in question. But no case to which we are referred has held that this act of Congress overrides the law of a state which prescribes how process shall be served to give its courts jurisdiction.

As the summons was not served on the defendants as provided by the law of this state, the service should have been set aside.

The order should therefore be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

McLAUGHLIN, J., concurs.

---

CENTRAL TRUST CO. OF NEW YORK v. GAFFNEY et al.

(Supreme Court, Appellate Division, First Department. June 20, 1913.)

1. TRUSTS (§ 305*)—FINAL SETTLEMENT—PROCEEDINGS BY TRUSTEE.

In an action by a trustee for an accounting, where the mother of a beneficiary claims an interest in the fund under an agreement with her son, the court cannot consider any personal obligation of the beneficiary, but only an obligation which is enforceable as a trust upon the fund.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 421–426; Dec. Dig. § 305.*]

2. TRUSTS (§ 1*)—"EXPRESS TRUST"—ESSENTIALS.

To constitute a valid trust there must be a designated beneficiary, a designated trustee, who is not the beneficiary, a designated fund or other property, and the actual delivery of the fund or property to the trustee.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 1; Dec. Dig. § 1.* For other definitions, see Words and Phrases, vol. 3, pp. 2611–2613.]

3. TRUSTS (§ 10*)—CREATION OF EXPRESS TRUSTS—TRANSFER OF LEGAL TITLE.

Where a beneficiary, who was entitled to the income from a trust fund of personal property, executed an agreement assigning one-fifth of the income to his mother, and providing that the only interest she should have in the principal of the fund was the right to have one-fifth thereof held by the trustee, or some other trustee to be agreed upon, for the purpose of producing the income, and that upon the termination of the original trust the beneficiary would enter into a further agreement evidencing the trust in favor of his mother, and appointing a trustee satisfactory to her, the instrument·was insufficient to pass the title to any part of the fund to any trustee, and therefore did not constitute a trust, especially in view of Personal Property Law (Consol. Laws 1909, c. 41) § 15, which provides that a beneficiary cannot assign his right to the income from personal property held in trust for him.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 8; Dec. Dig. § 10.*]

4. TRUSTS (§ 14*)—EXPRESS TRUSTS—TRANSFER OF TITLE.

While the phraseology of such an instrument is not conclusive, a present intention to assign title to a designated trustee must be manifested by the instrument before a trust can be created.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 12; Dec. Dig. § 14.*]

5. TRUSTS (§ 14*)—CREATION—INSTRUMENTS DECLARING TRUSTS.

Nor does the agreement amount to a declaration of trust 'by the beneficiary in favor of his mother, since no intention is manifested to take title as trustee, but, on the contrary, the appointment of some other trustee in the future is clearly contemplated.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 12; Dec. Dig. § 14.*]

6. TRUSTS (§ 14*)—RIGHTS OF BENEFICIARY AGAINST TRUSTEE—ESTABLISHMENT OF TRUST.

Equity will not enforce an executory agreement, made without consideration, to create a trust.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 12; Dec. Dig. § 14.*]

7. TRUSTS (§ 13*)—CONSIDERATION—DETRIMENT TO PROMISEE.

Where a trust for the benefit of minor children provided that the income should be paid to their guardian, during their minority, for their support, and stipulated that she should not be compelled to account to any. court for such income, the guardian has no rights under the trust, the surrender of which is sufficient consideration to support an agreement by one of the beneficiaries to create a trust in a portion of the fund for the guardian upon the termination of the original trust, especially where the subsequent agreement does not recite that the guardian has surrendered any right she may have had under the original trust to use any part of the money for her own benefit.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 11; Dec. Dig. § 13.*]

8. TRUSTS (§ 13*)—CONSIDERATION—INSTRUMENTS UNDER SEAL.

The fact that an instrument agreeing to create a trust in the future is under seal does not prevent the court from ascertaining whether it was actually made upon sufficient consideration.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 11; Dec. Dig. § 13.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeal from Order Entered on Report of Referee.

Action by the Central Trust Company of New York against Fannie Humphreys Gaffney and others for an accounting and settlement of a trust. From a judgment distributing the trust funds, defendant named appeals. Affirmed.

See, also, 149 App. Div. 913, 133 N. Y. Supp. 1115.

The opinion of the referee was as follows:

The plaintiff, as trustee, has brought this action to have its account judicially determined and for instructions as to the distribution of the trust estate. The trust was created by an instrument dated December 21, 1894, by one Frederic Humphreys in favor of his two grandchildren Fredric E. Humphreys and Jayta Humphreys (now Jayta Humphreys Von Wolf), defendants herein, who were then infants. The plaintiff was made trustee. The remaining defendant, Fannie Humphreys Gaffney, the mother, and at that time the guardian of the infant beneficiaries, was a party to the trust agreement. The trust estate consisted mainly of 875 shares of stock of the Humphreys Homeopathic Medicine Company and 40 shares of the New Jersey Central Railway Company. By the terms of the instrument the trustee was required to pay to Fannie Humphreys Gaffney, as guardian, or to her legally appointed successor, during the minority of the beneficiaries or either of them, specified amounts of the income; and each beneficiary upon attaining the age of 21 years was then to receive one-half of the accumulated income and thereafter a full one-half of the income until the beneficiary Jayta Humphreys should reach the age of 30 years. At that time—November 6, 1911—the principal of the trust was to be paid over in equal parts to the two beneficiaries and the trust terminated.

No question is raised as to the validity of this trust, but the defendant Fannie Humphreys Gaffney, by her answer, asserts an interest in a portion of the subject-matter of the trust by virtue of two agreements entered into with her, separately, by each of the defendants, Fredric E. Humphreys and Jayta Humphreys Von Wolf, on November 21, 1903. This claim is acquiesced in by the defendant Von Wolf, but is resisted by the defendant Humphreys, who, the plaintiff and the defendant Gaffney having rested, makes a motion to dismiss as to him the claim of the defendant Gaffney, and the sole question now to be decided is whether the instrument of November 21, 1903, created in favor of Mrs. Gaffney any interest in Humphreys' share of the original trust estate which a court of equity will enforce. It may be noted here that Humphreys was 20 years of age when the agreement was entered into, and that about three months after attaining majority he indorsed on the agreement a ratification thereof.

The effect of the agreement must be sought in its terms. After a preamble purporting to recite a valuable consideration and reciting a further consideration of natural affection and the sum of one dollar, the instrument continues as follows:

"First. The party of the first part (Humphreys) has sold, assigned, transferred and set over, and by these presents does hereby sell, assign, transfer and set over to the party of the second part (Gaffney) for and during the term of the natural life of the said party of the second part, a one-fifth interest in the net rents, issues and incomes resulting from the aforesaid 437½ shares of the capital stock of the Humphreys Homeopathic Medicine Company and 20 shares of the capital stock of the New Jersey Central Railroad Company after the first day of October, 1904, provided nevertheless that the amount of the net rents, issues and income so assigned, transferred and set over to the party of the second part shall never in any year thereafter exceed the sum of two thousand dollars ($2,000). * * *

"Second. It is understood and agreed by and between parties of the first and second parts that the only interest that the party of the second part shall have in and to the principal represented by the said 437½ shares of the capital stock of the Humphreys Homeopathic Medicine Company and 20 shares of the capital stock of the New Jersey Central Railroad Company is

the right to have one-fifth of said shares held by the Central Trust Company of New York as trustee, or some other trustee to be mutually agreed upon by and between the parties of the first and second parts, for the purpose of investment and safe-keeping, in order to produce the rents, issues and income a portion of which is hereby transferred and set over to the said party of the second part or intended so to be.

"Third. The party of the first part further agrees to and with the party of the second part that upon the party of the third part (Jayta Humphreys Von Wolf) attaining the age of thirty years he will enter into a further agreement with the party of the second part, evidencing the trust in favor of the party of the second part created in and by this agreement, and appointing a trustee thereunder satisfactory to the party of the second part for the purpose of holding the one-fifth of the aforesaid 437½ shares of the capital stock of Humphreys Homeopathic Medicine Company and 20 shares of the capital stock of the New Jersey Central Railroad Company; and the party of the first part further agrees from time to time to make, execute and deliver all such further assignments or instruments of transfer or declarations as may be necessary or appropriate to further secure to the party of the second part the interests hereby transferred and assigned to her, or intended so to be."

[1] It is the contention of the defendant Gaffney that this instrument created a trust whereby the Central Trust Company was to hold one-fifth of the shares of stock of the defendant Humphreys in trust to pay her for life the income therefrom, not exceeding $2,000 annually, or, if ineffectual for that purpose, that the instrument was a declaration of trust by Humphreys constituting himself trustee of the shares for Mrs. Gaffney's benefit. The defendant Humphreys contends, on the other hand, that the instrument assigned no interest in the corpus of the trust estate and created no trust or declaration of trust therein in favor of Mrs. Gaffney, but was merely an assignment of a part of the income and at most a personal agreement on his part to establish a trust in favor of Mrs. Gaffney upon the termination of the original trust. This agreement Humphreys has repudiated by demanding, on the day that the original trust expired, the delivery to him of all of his share of the principal of the trust. Of course, any purely personal obligation that may have been incurred by Humphreys, but which is not enforceable as a trust against the shares constituting the original trust estate, is immaterial on the issues submitted.

[2] The well-known requisites of a valid trust have been very concisely stated by the Court of Appeals in Brown v. Spohr, 180 N. Y. 201, 209, 73 N. E. 14, 16, as follows:

"(1) A designated beneficiary; (2) a designated trustee, who must not be the beneficiary; (3) a fund or other property sufficiently designated or identified to enable title thereto to pass to the trustee; and (4) the actual delivery of the fund or other property, or of a legal assignment thereof to the trustee, with the intention of passing legal title thereto to him as trustee."

[3] It is the fourth of these requisites that presents the main legal obstacle to the establishment of the trust contended for. The agreement assigns in apt terms one-fifth of the income of the stock to Mrs. Gaffney for her life. But in the second paragraph—the only one dealing with the principal or corpus—words of assignment or transfer are lacking, and the provision is merely that "the only interest that the party of the second part shall have in and to" the shares constituting the principal "is the right to have one-fifth of said shares held by the Central Trust Company of New York as trustee, or some other trustee to be mutually agreed upon by and between the parties," to produce the income intended to be transferred. The third paragraph, as has been seen, fixes the date of the termination of the original trust as the time when the defendant Humphreys should "enter into a further agreement * * * evidencing the trust * * * created in and by this agreement, and appointing a trustee thereunder satisfactory to the party of the second part," and is not only consistent with but lends force to the contention that the appointment of a trustee and the transfer to him of title to the principal fund was postponed until the termination of the original trust.

[4] The phraseology of the instrument is, of course, not conclusive provided the present intent to assign the title to a designated trustee is manifested; but such an intent is indispensable. Christmas v. Russell, 14 Wall. (U. S.) 69, 20 L. Ed. 762. "To constitute a trust there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created." Beaver v. Beaver, 117 N. Y. 421, 428, 22 N. E. 940, 941 (6 L. R. A. 403, 15 Am. St. Rep. 531). After a careful survey of the entire instrument, I have reached the conclusion that within the well-established principles of law it cannot be held to pass to any trustee the present title to any part of the principal fund.

The reasons leading to this conclusion are, briefly: That the second paragraph of the instrument does not purport to assign any present interest in the corpus of the original trust, but is on its face merely a limitation of the interest to be assigned at a future date; that no trustee is clearly designated, the provision being merely that the only right of the party of the second part shall be to have "one-fifth of the shares held by the Central Trust Company of New York, as trustee, or some other trustee to be mutually agreed upon"; that the Central Trust Company was not notified of such a trusteeship during the period of the original trust; and that by paragraph 3 the appointment of a trustee and the execution of a further trust agreement are expressly required upon the very date of the termination of the original trust. There is a further consideration which to my mind is very significant and affords a reasonable explanation of the absence of any immediate transfer of the securities to a trustee. That is the prohibition of section 15 of the Personal Property Law (Consol. Laws 1909, c. 41), which rendered Humphreys as a beneficiary of the original trust powerless to affect by assignment or otherwise his right to the income of the original trust. The parties doubtless recognized that the assignment of one-fifth of his share of the income was wholly inoperative during the continuance of that trust and that until its expiration he could not even by the present assignment of a portion of his share of the principal to a trustee give Mrs. Gaffney any enforceable right to the income. Whatever income she received during that period was necessarily at the pleasure of Humphreys. The instrument contains a provision that he shall, from time to time until the termination of the original trust, furnish her with appropriate orders to enable her to receive her proportion of the income from the Central Trust Company, but of course compliance with this provision was entirely optional; the provision itself being legally unenforceable. The parties, doubtless knowing that the income of Humphreys could not then be affected by a present assignment of the principal to a trustee, were content to enter into such an agreement as Humphreys might deem himself morally bound to perform by paying the stated amount of income to Mrs. Gaffney during the period of the original trust, and at the end of that period by completely establishing the trust in her favor by the transfer of the agreed portion of the principal to a designated trustee.

[5] The contention of the defendant Gaffney, that the instrument amounts to a declaration of trust constituting Humphreys trustee for her benefit, also seems to me to be contrary to the manifest intent of the instrument. No provision of the instrument indicates even remotely that Humphreys intended to hold the legal title to a part of his remainder as trustee for Mrs. Gaffney, but on the contrary the instrument as a whole looks to the establishment of a trust in the future and the appointment of a trustee other than Humphreys. In Young v. Young, 80 N. Y. 423, 438 (36 Am. Rep. 634) Judge Rappallo, writing for the court, said:

"To create a trust, the acts or words relied upon must be unequivocal, implying that the person holds the property as trustee for another. * * * Though it is not necessary that the declaration of trust be in terms explicit, the donor must have evinced by acts which admit of no other interpretation, that such legal right as he retains, is held by him as trustee for the donee. * * * The settlor must transfer the property to a trustee, or declare that he holds it himself in trust."

And in Waad v. Hazleton, 137 N. Y. 215, 219, 33 N. E. 143, 145 (21 L. R. A. 693, 33 Am. St. Rep. 707), the court said:

"The acts must be of that character which will admit of no other interpretation than that such legal rights as the settlor retains are held by him as trustee for the donee; the settlor must either transfer the property to a trustee or declare that he holds it himself in trust."

The instrument here involved falls far short of satisfying the rule that the intention of the settlor to declare the trust and to take title as trustee must clearly and unequivocally appear.

[6] It remains to be considered whether a court of equity will require Humphreys to complete the trust in favor of Mrs. Gaffney by assigning to a trustee the one-fifth of the securities according to their agreement. This is really the relief which Mrs. Gaffney's answer demands. If the agreement had been made for a valuable consideration, it is quite possible that equity would enforce it by establishing the trust; but it is the uniform rule that, where an agreement is voluntary and without consideration, equity will afford no relief but will leave the parties where it finds them. The rule is laid down in the article "Trusts," 39 Cyc., at page 41, as follows:

"The necessity of a valuable consideration to support a trust depends upon whether the trust is executed or executory, it being the rule that equity will no more enforce a voluntary executory agreement to create or establish a trust, when made without consideration, than it will perfect a defective gift."

In Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446, the court, speaking of voluntary settlements, said:

"The act constituting the transfer must be consummated, and not remain incomplete, or rest in mere intention, and this is the rule whether the gift is by delivery only, or by the creation of a trust in a third person, or in creating the donor himself a trustee"—citing with approval Milroy v. Lord, 4 De Gex F. & J. 264.

Also in Young v. Young, 80 N. Y. 422, 437, the court said:

"It is well settled that equity will not interpose to perfect a defective gift or voluntary settlement made without consideration. If legally made, it will be upheld, but it must stand as made or not at all."

Turning to the provisions of the instrument, it is apparent that diligent effort was made to recite a valuable consideration in addition to the considerations of natural love and affection and of the sum of one dollar. The consideration is declared to consist of various rights said to belong to Mrs. Gaffney under the trust agreement of 1894. An examination of that agreement discloses that it was solely for the benefit of Jayta Humphreys and Fredric E. Humphreys, and that Mrs. Gaffney had no rights under it. Any participation by Mrs. Gaffney in the benefits of the trust fund was expressly excluded, for, as each of the beneficiaries arrived at full age, he or she was to receive one-half of all accumulated income and one-half of the entire income thereafter until the final distribution of the principal in equal shares to the two. Mrs. Gaffney's complete exclusion from the benefits of the fund is shown by the provision that, in the event of the death of both of the beneficiaries during the term of the trust, the entire fund should be paid over to the next of kin of the one last dying, according to the statute governing the distribution of the personal estates of persons dying intestate. The provision which comes nearest to conferring some benefit on Mrs. Gaffney is that which relieves her of any duty to account as guardian for the expenditure of revenues "provided to be expended by her in the maintenance, dress, support and education of said children."

[7] It would seem that this provision did not contemplate that the guardian should use for her own benefit any part of these moneys; but, even if that privilege was hers, she has presumably exercised it, and it is not recited that she surrendered it in consideration of the execution of the subsequent agreement with the defendant Humphreys.

[8] The fact that this instrument is under seal does not preclude the court from determining whether it was actually made upon sufficient consideration.

"Since equity may go behind a seal and determine whether an agreement is founded on a valuable consideration, the fact that an imperfect executory trust is evidenced by a sealed instrument will not entitle it to be enforced in

equity if it is in fact voluntary." Article "Trusts and Trustees," 28 Am. & Eng. Encyc. of Law (2d Ed.) p. 892.

The conclusion is unavoidable that this agreement was not founded upon a valuable consideration, and, being insufficient in itself to create a trust, equity will not lend its aid to establish a trust based upon it.

The motion of the defendant Humphreys is granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

E. R. Greene, of New York City, for appellant.

A. Rathbone, of New York City, for respondent Central Trust Co. of New York.

J. L. Bishop, of New York City, for respondent F. E. Humphreys.

PER CURIAM. Judgment affirmed, with costs, on opinion of David Leventritt, Referee.

---

### HOWATT v. HOWATT et al.

(Supreme Court, Appellate Division, Third Department. July 8, 1913.)

1. DIVORCE (§ 181\*)—INTERLOCUTORY JUDGMENT—REVIEW—NOTICE OF APPEAL —DEFAULT JUDGMENT.

Where an interlocutory judgment for plaintiff, in an action for divorce, was entered by default, and was not specified in the notice of appeal, as required by Code Civ. Proc. § 1301, it was not reviewable.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 567; Dec. Dig. § 181.\*]

2. DIVORCE (§ 160\*)—INTERLOCUTORY JUDGMENT—MOTION FOR FINAL JUDGMENT—DELAY.

After an interlocutory judgment for divorce by default entered June 1, 1912, defendant obtained an order to show cause why the interlocutory judgment should not be vacated, and on September 14th obtained an order opening the default on conditions with which he did not comply, providing that on such failure the motion should be deemed denied. On October 1st defendant was served with notice of trial at a term which began on the 21st of that month. Defendant appealed from the order vacating the judgment and from the conditions imposed, but the appeal was dismissed by consent for want of prosecution on January 7, 1913, and on February 8th plaintiff applied for final judgment, which was granted. *Held* to constitute a sufficient excuse for plaintiff's delay beyond three months and fifteen days in applying for final decree.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 521; Dec. Dig. § 160.\*]

3. DIVORCE (§ 160\*)—INTERLOCUTORY JUDGMENT—FINAL JUDGMENT—DELAY— EXCUSE.

Where plaintiff, in an action for divorce, has delayed applying for final judgment beyond the three months and fifteen days, it is better practice to have an order entered excusing the delay and directing final judgment, but the entry of final judgment under the signature of the trial judge answers the requirement of Code Civ. Proc. § 1774, providing that the delay must be excused.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 521; Dec. Dig. § 160.\*]

4. DIVORCE (§ 161\*)—INTERLOCUTORY JUDGMENT—VACATION—CONDITION.

Where an order setting aside an interlocutory judgment and permitting defendant to defend was conditional, and provided that the motion should

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes